UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JUSTIN TIMPERIO,

        Plaintiff,

- against -

BRONX-LEBANON HOSPITAL CENTER
and UPSTATE GUNS AND AMMO, LLC,

        Defendants.

**MEMORANDUM
OPINION**

18 Civ. 1804 (PGG)

---

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff Justin Timperio brings claims against (1) Bronx-Lebanon Hospital Center (the "Hospital") for negligence; negligent infliction of emotional distress; and negligent hiring, retention, training and supervision; and (2) Upstate Guns and Ammo, LLC ("Upstate") for negligent entrustment and negligence per se. Defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The Hospital, in the alternative, moves for summary judgment.

        On March 31, 2019, this Court issued an order (Dkt. No. 43) (1) converting the Hospital's motion to dismiss to a motion for summary judgment, and denying the motion; and (2) granting Upstate's motion to dismiss. The purpose of this opinion is to explain the Court's reasoning.

## BACKGROUND[1]

### I. FACTS

        On June 30, 2017, Plaintiff Timperio – then a first-year medical resident – was shot by Dr. Henry Bello, a former Hospital employee. Bello's employment had resigned in 2015

---

[1] Unless otherwise noted, the following facts are drawn from the Complaint and are presumed true for purposes of resolving Defendants' motions. See Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

after an allegation that he had sexually harassed a Hospital employee. (Cmplt. (Dkt. No. 9) at 1-2 & n.2)[2] On June 30, 2017, Bello returned to the Hospital. He was wearing a white doctor's coat and a Hospital identification badge, which had not been taken from him when his employment was terminated. (Id. at 2) Hidden under Bello's white coat was an AR-15 rifle and extra magazines, which he had purchased from Defendant Upstate, a firearms shop in Schenectady, New York. (Id.) Bello was also carrying a Tropicana orange juice container filled with gasoline, which he used to set fire to the Hospital's 16th floor nursing station. (Id.)

After arriving at the Hospital on June 30, 2017, Bello shot Plaintiff; killed another doctor; and wounded four other members of the medical staff and a patient. (Id. at 1-2) The bullet that hit Plaintiff entered his abdomen and exited his right thigh, "requiring surgical procedures and treatment . . . at Defendant Hospital and Mt. Sinai Hospital" from June 30, 2017 to July 21, 2017. (Id. at 2) After his rampage, Bello killed himself. (Id. at 3)

This was not the first shooting incident at the Hospital. (Id.) On November 11, 2011, a gang member shot into the Hospital's emergency room, hitting a nurse and a security guard. (Id.) Plaintiff alleges that, after the 2011 incident, the Hospital was on "notice that its security system was ineffective," but it did nothing to improve it. (Id.) Plaintiff also alleges that the Hospital "failed to take proper action" after it learned that Bello had sexually harassed another Hospital employee and should have taken custody of Bello's identification badge when he resigned. (Id.)

As for Upstate, Plaintiff alleges that it sold Bello, a New York City resident, an AR-15 rifle on June 22, 2017. (Id. at 5) According to Plaintiff, that sale constitutes negligent

---

[2] The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Filing system.

2

entrustment in violation of 15 U.S.C. § 7903(B), because Upstate was on notice that AR-15 rifles are "the semi-automatic weapon of choice in . . . mass death and casualty shootings." (Id. at 6-7) Plaintiff also alleges that Upstate was required to – but did not – contact the New York City Police Department before selling Bello the rifle to determine whether Bello had a New York City permit for the weapon. (Id. at 6)

## DISCUSSION

### I. Whether the Hospital's Rule 12(b)(6) Motion Should Be Converted to a Rule 56 Motion for Summary Judgment

In support of its motion to dismiss, the Hospital has submitted an affidavit from Debra Jarmon, a third-party administrator for workers compensation claims for the Hospital. Attached to Jarmon's affidavit are the following documents: (1) the Hospital's workers' compensation policy as of June 30, 2017 (Dkt. No. 36-2, at 3); (2) a workers' compensation claim the Hospital filed for Plaintiff on June 30, 2017 (Dkt. No. 36-2, at 29-32); (3) the New York State Workers' Compensation Board Notice of Case Assembly relating to Plaintiff (Dkt. No. 36-2, at 33); and (4) the New York State Workers' Compensation Board payment report for Plaintiff. (Dkt. No. 36-2, at 36)

Federal Rule of Civil Procedure 12(d) provides that "[i]f, on a motion under R. 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Accordingly, where, as here, a court considering a motion to dismiss is "presented with matters outside the pleadings," there are "two options." Chambers v. Time Warner, Inc., 282 F.3d 147, 154 (2d Cir. 2002). The court either "exclude[s] the extrinsic documents," or it

3

"convert[s] the motion to one for summary judgment," giving the parties adequate notice and an opportunity to "submit the additional supporting material contemplated by Rule 56." Id. (citing Carter v. Stanton, 405 U.S. 669, 671 (1972) (per curiam); Friedl v. City of N.Y., 210 F.3d 79, 83-84 (2d Cir. 2000); Morelli v. Cedel, 141 F.3d 39, 45-46 (2d Cir. 1998)). "'Federal courts have complete discretion to determine whether . . . to convert [a] motion [to dismiss] to one for summary judgment.'" Abbey v. 3F Therapeutics, Inc., No. 06 Civ. 409 (KMW), 2009 WL 4333819, at *5 (S.D.N.Y. Dec. 2, 2009) (quoting Carione v. United States, 368 F. Supp. 2d 186, 191 (E.D.N.Y. 2005)).

"'The essential inquiry in determining whether it is appropriate to convert a motion [to dismiss] into a motion for summary judgment is whether the non-movant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings.'" Ferguson v. Jones, 10 Civ. 817 (PGG), 2011 WL 4344434, at *2 (S.D.N.Y. Sept. 12, 2011) (alteration in original) (quoting Costor v. Sanders, No. 07 Civ. 11311 (NRB), 2009 WL 1834374, at *2 (S.D.N.Y. June 16, 2009)).

Here, the Hospital requests that – if the Court finds it necessary to consider evidence outside the pleadings – its motion to dismiss be converted "to a summary judgment motion under FRCP 56." (Hospital Br. (Dkt. No. 35) at 8) Plaintiff does not oppose conversion. Indeed, Plaintiff has supplemented the record with his affidavit (see Kriss Decl., Ex. A (Dkt. No. 40)), and that affidavit makes clear that Plaintiff is familiar with the documents submitted by the Hospital. (See id. ¶¶ 7-8) Accordingly, the Hospital's motion to dismiss will be converted to a

4

motion for summary judgment.

## II.  LEGAL STANDARDS

### A.  Summary Judgment Standard

Summary judgment is warranted when the moving party shows that "there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citing Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)). "'[W]here the nonmoving party will bear the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim.'" Lesavoy v. Lane, No. 02 Civ. 10162 (RWS), 2008 WL 2704393, at *7 (S.D.N.Y. July 10, 2008) (quoting Bay v. Times Mirror Magazines, Inc., 936 F.2d 112, 116 (2d Cir. 1991)).

In deciding a summary judgment motion, the Court "'resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" Spinelli v. City of N.Y., 579 F.3d 160, 166 (2d Cir. 2009) (quoting Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001)). However, a "'party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment . . . . [M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist.'" Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (alterations in original) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)).

5

## B. Rule 12(b)(6) Standard

Upstate's motion is governed by Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner, 496 F.3d at 237 (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

## III. ANALYSIS

### A. The Hospital's Motion for Summary Judgment

The Hospital argues that it is entitled to summary judgment because Plaintiff's claims are barred by the exclusive remedy provision of Workers' Compensation Law §§ 11 and 29(6).

"As a general rule, when an employee is injured in the course of his employment, his sole remedy against his employer lies in his entitlement to recovery under the Workers' Compensation Law." Billy v. Consol. Mach. Tool Corp., 51 N.Y.2d 152, 156 (1980) (citing Workers' Compensation Law § 11). Workers' Compensation Law § 10 provides:

> Every employer subject to this chapter shall in accordance with this chapter, except as otherwise provided in section twenty-five-a hereof, secure compensation to his employees and pay or provide compensation for their disability or death from injury arising out of and in the course of the employment without regard to fault as a cause of the injury . . . .

Workers' Compensation Law § 10.

Workers' Compensation Law § 11 provides in relevant part:

The liability of an employer prescribed by the last preceding section shall be

6

exclusive and in place of any other liability whatsoever, to such employee, his or her personal representatives, spouse, parents, dependents, distributees, or any person otherwise entitled to recover damages, contribution or indemnity, at common law or otherwise, on account of such injury or death or liability arising therefrom, except that if an employer fails to secure the payment of compensation for his or her injured employees and their dependents as provided in section fifty of this chapter, an injured employee, or his or her legal representative in case of death results from the injury, may, at his or her option, elect to claim compensation under this chapter, or to maintain an action in the courts for damages on account of such injury; and in such an action it shall not be necessary to plead or prove freedom from contributory negligence nor may the defendant plead as a defense that the injury was caused by the negligence of a fellow servant nor that the employee assumed the risk of his or her employment, nor that the injury was due to the contributory negligence of the employee.

Id. § 11.

Finally, Workers' Compensation Law § 29(6) provides:

The right to compensation or benefits under this chapter, shall be the exclusive remedy to an employee, or in case of death his or her dependents, when such employee is injured or killed by the negligence or wrong of another in the same employ, the employer's insurer or any collective bargaining agent of the employer's employees or any employee, of such insurer or such collective bargaining agent (while acting within the scope of his or her employment). The limitation of liability of an employer set forth in section eleven of this article for the injury or death of an employee shall be applicable to another in the same employ, the employer's insurer, any collective bargaining agent of the employer's employees or any employee of the employer's insurer or such collective bargaining agent (while acting within the scope of his or her employment). The option to maintain an action in the courts for damages based on the employer's failure to secure compensation for injured employees and their dependents as set forth in section eleven of this article shall not be construed to include the right to maintain an action against another in the same employ, the employer's insurer, any collective bargaining agent of the employer's employees or any employee of the employer's insurer or such collective bargaining agent (while acting within the scope of his or her employment).

Id. § 29(6).

Here, with respect to Plaintiff's claim against the Hospital, the two key issues are whether (1) Plaintiff's injury "[arose] out of and in the course of [his] employment"; and (2) Plaintiff can elect to sue in lieu of accepting Workers' Compensation benefits.

The Court finds – based on the facts before it – that Plaintiff's injury did not

7

"aris[e] out of" his employment. Workers' Compensation Law § 10. "[O]nly if an injury flows as a natural consequence of the employee's duties can it be said to arise out of the employment." Matter of Lemon v. N.Y.C. Transit Auth., 72 N.Y.2d 324, 326-27 (1988) (citations omitted). "A purely fortuitous coincidence of time and place is not enough. There must be a causal relation[ship or nexus between the accident and the employment]." Connelly v. Samaritan Hosp., 259 N.Y. 137, 139 (1932).

"'In determining whether the victim of an assault is entitled to workers' compensation benefits, the test is whether the assault originated in work-related differences or from pure personal animosity between the combatants.'" Matter of Blair v. Bailey, 279 A.D.2d 941, 942 (3d Dep't 2001) (quoting Matter of Baker v. Hudson Val. Nursing Home, 233 A.D.2d 608, 608 (3d Dep't 1996)). Such a determination "is a question of fact." Id. at 942. Here, there is no evidence suggesting that the shooting originated in work-related differences.

The cases the Hospital cites are not to the contrary. In Pollock v. City of New York, a physician at Kings County Hospital was shot to death by a former patient "who was dissatisfied with surgical treatment he had received [at Kings County Hospital]." 145 A.D.2d 550, 550 (2d Dep't 1988). Because the shooting was related to the victim's work, the injury was subject to the Workers' Compensation Law. Similarly, in Ross v. State, a hospital employee died when he was stabbed by an "alleged lunatic whom the intestate was attempting, at the direction of his superior officers, to apprehend and return to the hospital." 8 A.D.2d 902, 902 (3d Dep't 1959). Because the injury arose from the victim's employment, it was held subject to the Workers' Compensation Law.

Finally, the Hospital cites an unpublished opinion in DeJesus v. N.Y.C. Health & Hosp. Corp., No. 25309/96, 2002 WL 31010978, at *1-2 (N.Y. Sup. Ct. Queens Cnty. Aug. 14,

8

2002). In that case, plaintiff – a New York City Health and Hospitals Corporation employee – was "forced off the elevator by an unknown male, and raped at knife point in a secluded bathroom." Id. at *1. The court held that plaintiff's claim was subject to the Workers' Compensation Law. Id. at *2. In doing so, the court did not address the "arising out of" requirement, but instead said that because "plaintiff filed for and is receiving Workers' Compensation benefits as a result of her injuries," she had "availed herself of her exclusive remedy" and could not sue her employer for an additional recovery. Id. at *1-2. That is not the case here. Plaintiff has not "availed" himself of Workers' Compensation benefits. (See Kriss Decl., Ex. A (Dkt. No. 40) ¶¶ 6-11) Instead, the Hospital filed a workers' compensation claim on behalf of Plaintiff without his knowledge, and when Plaintiff received workers' compensation checks, he did not cash them. (See id.)

Accordingly, the Hospital's motion for summary judgment will be denied.

### B. UPSTATE'S MOTION TO DISMISS

Upstate moves to dismiss Plaintiff's claims on the ground that they are barred by the Protection of Lawful Commerce in Arms Act (the "Act"), 15 U.S.C. §§ 7901-7903. (Upstate Br. (Dkt. No. 33) at 7, 13)

The Act provides broad protection to sellers of firearms, and states that "[a] qualified civil liability action may not be brought in any Federal or State court." 15 U.S.C. § 7902(a). The Act defines "qualified civil liability action" as

> a civil action or proceeding or an administrative proceeding brought by any person against a manufacturer or seller of a qualified product, or a trade association, for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party.

Id. § 7903(5)(A). "Qualified product" is defined as "a firearm." Id. § 7903(4). The Act carves out six exceptions to this prohibition, including claims for "negligent entrustment and negligence

9

per se." Id. § 7903(5)(A)(ii).

Plaintiff does not dispute that, unless an exception applies, his lawsuit is barred by the Act. (See Pltf. Br. (Dkt. No. 38) at 6) The Act defines "negligent entrustment" as "the supplying of a qualified product by a seller for use by another person when the seller knows, or reasonably should know, the person to whom the product is supplied is likely to, and does, use the product in a manner involving unreasonable risk or physical injury to the person or others." 15 U.S.C. § 7903(5)(B). The Act also states that it does not "create a public or private cause of action or remedy." Id. § 7903(5)(C). Accordingly, Plaintiff must also satisfy the requirements for a negligent entrustment claim under New York law.

In New York, the tort of negligent entrustment requires a plaintiff to prove "'some special knowledge on the part of the defendant concerning a characteristic or condition peculiar to [the user] which renders the [user]'s use of the chattel unreasonably dangerous . . . .'" Adeyinka v. Yankee Fiber Control, Inc., 564 F. Supp. 2d 265, 286 (S.D.N.Y. 2008) (third alteration in original) (quoting Troncoso v. Home Depot, U.S.A., Inc., 258 A.D.2d 644, 645 (2d Dep't 1999)); see also Hamilton v. Beretta U.S.A. Corp., 96 N.Y.2d 222, 237 (2001) ("The tort of negligent entrustment is based on the degree of knowledge the supplier of a chattel has or should have concerning the entrustee's propensity to use the chattel in an improper or dangerous fashion. Gun sales have subjected suppliers to liability under this theory. Of course, without the requisite knowledge, the tort of negligent entrustment does not lie." (citations omitted)).

Here, Plaintiff does not allege that Upstate knew – or should have known – about Bello's "propensity to use the chattel in an improper or dangerous fashion." Hamilton, 96 N.Y.2d at 237. Instead, Plaintiff asks the Court to re-write more than a century of law concerning this topic by finding that it would be negligent for Upstate to entrust an AR-15 to

10

anyone, because of "the increase of mass shootings with shooters using the AR-15." (Pltf. Br. (Dkt. No. 38) at 18-19) This Court cannot re-write the law in the fashion Plaintiff demands. Accordingly, Upstate's motion to dismiss Plaintiff's negligent entrustment claim will be granted.

As for Plaintiff's claim of negligence per se – because the Act does not define this term – the Court must look to New York law to determine the elements of such a claim. In New York, "the 'unexcused omission' or violation of a duty imposed by statute for the benefit of a particular class 'is negligence itself." Chen v. United States, 854 F.2d 622, 627 (2d Cir. 1988) (emphasis in original) (quoting Martin v. Herzog, 228 N.Y. 164, 168 (1920)). "However, it is 'long and firmly established in New York, that the violation of a rule of an administrative agency' is 'merely some evidence' of negligence but 'does not establish negligence as a matter of law' because a regulation 'lack[s] the force and effect' of a statute." Id. (alteration in original) (quoting Long v. Forest-Fehlhaber, 55 N.Y.2d 154, 160 (1982)).

In any event, the mere "[v]iolation of a statute . . . does not automatically constitute negligence per se. Only statutes designed to protect a definite class of persons from a particular hazard, which persons within the class are incapable of avoiding, can give rise to negligence per se for violation of the statute." German by German v. Fed. Home Loan Mortg. Corp., 896 F. Supp. 1395, 1396 (S.D.N.Y. 1995) (citation omitted). Moreover,

> [i]n order to warrant a finding of negligence per se for a statutory violation, the statute must evidence "an intention, express or implied, that from disregard of [its] command a liability for resultant damages shall arise 'which would not exist but for the statute.'" Three factors are of central importance in this inquiry: (1) whether the plaintiff is one of the class for whose benefit the statute was enacted, (2) whether a finding of negligence per se for violation of the statute would promote the legislative purpose, and (3) whether creation of such liability would be consistent with the legislative scheme.

Id. at 1397 (second alteration in original) (quoting Gain v. E. Reinforcing Serv., 193 A.D.2d 255, 257 (3d Dep't 1993)).

11

Plaintiff argues that Upstate was negligent per se because it sold the AR-15 to Dr. Bello in violation of provisions of the New York City Administrative Code requiring Dr. Bello to have a New York City permit for such a firearm. See N.Y.C. Admin. Code §§ 10-303(5), 10-306(c)-(e). The Administrative Code sets forth municipal rules, however, and Plaintiff has not shown that the violation of such rules – as opposed to the violation of a statute – constitutes negligence per se.

Plaintiff further contends that Upstate's alleged violation of the New York City Administrative Code constitutes a violation of the Gun Control Act. The Gun Control Act makes it

> unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver . . . (b) any firearm to any person in any State where the purchase or possession by such person of such firearm would be in violation of any State law or any published ordinance applicable at the place of sale, delivery or other disposition, unless the licensee knows or has reasonable cause to believe that the purchase or possession would not be in violation of such State law or such published ordinance. . . .

18 U.S.C. § 922(b)(2).

As set forth above, the Gun Control Act addresses a sale or delivery that is unlawful "at the place of sale, delivery or other disposition." Here, Bello purchased the AR-15 in Schenectady, not in New York City. New York City Administrative Code § 303 has no applicability in Schenectady, where the firearm was purchased. Plaintiff argues, however, that the Gun Control Act prohibits any "other disposition" of a firearm, and because "Upstate Guns knew that Bello was a resident of NYC . . . the disposition of Upstate Gun's transaction with Bello was NYC." (Pltf. Br. (Dkt. No. 38) at 8) Plaintiff cites no authority in support of this interpretation of the statute, however, and the weight of the authority is against Plaintiff's interpretation. See, e.g., Huddleston v. United States, 415 U.S. 814, 823 (1974) ("other disposition" refers to the means by which a firearm can be transferred other than by "sale" or

12

"delivery," such as "through a redemptive transaction").

## CONCLUSION

For the reasons stated above, this Court granted Defendant Upstate Guns' motion to dismiss (Dkt. No. 33), and denied Defendant Hospital's motion for summary judgment. (Dkt. No. 34).

Dated: New York, New York
April 26, 2019

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge